# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff*<br><br>v.<br><br>KENNETH GREENHOW<br><br>*Defendant.* | Crim. Action No.: 3:15-cr-00221<br><br>**MEMORANDUM<br>AND ORDER** |

This matter comes before the Court on Defendant Kenneth Greenhow's ("Defendant" or "Greenhow") motion for compassionate release pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A).  (ECF Nos. 249, 251.)  Defendant is a 46-year-old inmate serving a 120-month term of imprisonment for conspiring to distribute and possess with intent to distribute heroin.  He resides at FCI Allenwood Medium and has approximately 3 years (41 months) remaining on his sentence.  He claims that his health conditions – namely, obesity and asthma – constitute extraordinary and compelling reasons warranting his early release in light of the COVID-19 pandemic.  The Court heard oral argument on November 18, 2020.  For the reasons that follow, Defendant's motion is denied.

I.

In 2015, Defendant pleaded guilty to conspiring to distribute and to possess with intent to distribute between 40 and 60 grams of heroin, contrary to 21 U.S.C. § 846.  (Plea Agreement 1, 6-7, ECF No. 244).

On September 22, 2015, this Court sentenced Defendant to a term of 120 months, to be followed by a 3-year term of supervised release.  (Judgment 1, 3, ECF No. 247).  According to

1

the sentencing guidelines, the total offense level was 29 points, which carried a sentencing range of 151 to 188 months.  (Sentencing Transcript ("Tr.") 2:16-18.)  However, the Court – taking into consideration Defendant's personal background and the quantity of drugs involved – varied down to 26 points.  (Tr. 2:16-20, 13:11-13).  Defendant fell into criminal history category 6 due to his history as a "career offender."  (Tr. 13:9-15).  Based on those factors, the Court determined the appropriate sentencing range was 120 to 150 months.  (Tr. 13:16-17).  In weighing the sentencing factors under 18 U.S.C. § 3553(a), the Court noted that Defendant's criminal history consisted primarily of drug offenses and that his prior time spent in prison had seemingly not deterred him from a criminal lifestyle.  (Tr. 15:14-17).  It also acknowledged his personal struggles as a child and adolescent, and his recent efforts to pursue rehab.  (Tr. 15:10-12, 12:17-13:3).

Defendant is incarcerated at FCI Allenwood Medium and has an anticipated release date of October 30, 2022.  (Moving Br. at 2).  However, he is participating in the BOP Residential Drug Abuse Program (RDAP) and, if he successfully completes the program, he would be eligible for release in May 2021, approximately six months from now.  (Id.).

In July 2020, Defendant submitted an internal request for compassionate release.  (ECF Nos. 249, 251-1).  The warden denied his request because his medical record did "not indicate [he] suffer[s] from a chronic or serious medical condition which is an incurable disease," and he was "not disabled or unable to perform activities of daily living" or "function in a correctional environment."  (Id.).

Later that month, Defendant filed a pro se motion for compassionate release under the First Step Act.  (ECF No. 249).  In October, federal public defender filed a supplemental motion for compassionate release.  (ECF Nos. 250, 251).  Defendant argues that he is eligible for a

sentence reduction because he is obese (his BMI was 46.2 in March 2018 and 38.7 in December 2019) and has a history of asthma (he was hospitalized for an asthma attack in 2013). (Moving Br. at 2-3; ECF No. 251-1). He believes those medical conditions increase his risk of serious illness from COVID-19, and that he is particularly at risk due to the recent outbreak at his facility (109 inmates tested positive in October 2020 – roughly 10% of the population). (*Id.* at 3-4).

Further, Defendant claims the 18 U.S.C. § 3553(a) factors do not present a barrier to his early release. Having served approximately 84% of his sentence, he argues that its purposes of deterrence and public safety have been served, and that further incarceration puts him at significant risk of illness or death while providing only marginal benefits to the public. (*Id.* at 7-8). He sets forth a release plan that includes living with his stepdaughter in Lakewood, working at a local Dollar Tree store, and participating in an outpatient drug treatment program. (*Id.* at 8).

The United States concedes that Defendant has exhausted his administrative remedies and that his obesity constitutes an "extraordinary and compelling reason" for a sentence reduction in light of the pandemic. (Opp. Br. at 11-12). Its primary arguments are that (1) the § 3553(a) factors preclude his early release; (2) FCI Allenwood Medium has adequately contained the COVID-19 outbreak; and (3) there is no evidence Defendant would have a lower chance of contracting the virus if he were released to Lakewood, New Jersey. (*Id.* at 12-15). First, it argues that Defendant's extensive criminal history, conduct in prison, and the serious nature of his drug trafficking offense are factors that weigh against reducing his sentence. (*Id.* at 13). Second, it points out that as of November 3, 2020, the number of people testing positive for COVID-19 at Defendant's facility had reduced to 1 inmate and 11 staff, demonstrating that BOP is controlling the spread of the virus and that there is no longer a major outbreak there. (*Id.* at 12). Third, it notes that Lakewood has much higher rates of positive cases than the rest of New

Jersey, and that Defendant's release plan does not include measures to reduce his risk of contracting the virus outside prison. (*Id.* at 13).

In his reply, Defendant argues that 124 inmates had tested positive for COVID at his facility and, even if they recovered, that indicates "the measures employed by BOP to prevent the spread of Covid-19 at the prison evidently failed to prevent over 124 inmate infections." (Reply Br. 2, ECF No. 253). Further, Defendant disagrees with the government's argument that he may be more likely to contract the virus if released to live in Lakewood, New Jersey. He contends that "FCI Allenwood Medium is located in Union County, Pennsylvania, where the current rate of Covid-19 infection is more than twice that of Ocean County, New Jersey, where Mr. Greenhow intends to live if released." (*Id.* at 3). He also asserts that social distancing is a necessary preventative measure that he not able to observe in prison, and that "individuals in congregate settings are more likely than others to become infected with Covid-19." (*Id.*).

## II.

A court may grant a compassionate release motion if the criteria in 18 U.S.C. § 3582(c) are satisfied. The First Step Act allows an inmate to move for compassionate release directly after he has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the [his] behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (codified at 18 U.S.C. § 3582(c)(1)(A)).

If those requirements are satisfied, a court may reduce a sentence if the modification is justified by "extraordinary and compelling reasons" and "is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). According to the Sentencing Commission's policy statement, a defendant's medical condition, age, family

circumstances, or "other reasons" may be grounds to find that "extraordinary and compelling reasons" for compassionate release exist. USSG § 1B1.13 cmt. n.1(A)-(D).

Courts have considered what "other reasons" are sufficient to warrant release under the "extraordinary and compelling" provision. In light of the COVID-19 pandemic, courts have generally deferred to the CDC's list of underlying medical conditions that increase one's risk of severe illness from the virus. *See, e.g.*, *United States v. Henderson*, No. CR 15-0329 (ES), 2020 WL 5055081, at *4 (D.N.J. Aug. 26, 2020). Obesity and severe obesity are known risk factors, and moderate-to-severe asthma is a potential risk factor. *People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Nov. 6, 2020).

Even if extraordinary and compelling circumstances for compassionate release are present, a court may deny the requested relief if the 18 U.S.C. § 3553(a) factors do not weigh in favor of the defendant's release. *See, e.g.*, *United States v. Pawlowski*, 967 F.3d 327 (3d Cir. 2020). Further, the Third Circuit has held that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

### III.

Because the United States does not dispute that Defendant has exhausted his administrative remedies and that his obesity is an "extraordinary and compelling" reason for compassionate release under USSG § 1B1.13 cmt. n.1, the only issue before this Court is whether Defendant's sentence should be reduced in light of the § 3553(a) factors.

Defendant seeks a reduction in sentence from 10 years to 7 years – nearly a 30% decrease, which Greenhow argues is a period sufficient to satisfy the sentencing objectives.(ECF 251 at 8).  However, in sentencing Defendant, this Court imposed a significantly shorter term of imprisonment than the sentencing guidelines recommended.  It varied downward from an offense level of 29 to 26, and then imposed a term at the lowest end of the range.  That is, while this Court could have sentenced Defendant to a term of 188 months, it imposed a 120-month term as an appropriate term based on the circumstances.  Given Defendant's extensive criminal history and the need for both general and specific deterrence, the Court does not ordinarily reduce the term.

However, different facts control here.  The COVID-19 outbreak at Allenwood continues. As of December 10, 2020, there has been a spike in cases, and there are 46 inmates and 11 staff members positive for COVID-19, with no deaths.  In addition, Greenhow began his participation in RDAP in February, 2020. If he had successfully completed this drug rehabilitation program, he would have been granted early release. Unfortunately, the RDAP program has been suspended for a number of months due to the pandemic.  No one can pinpoint when the pandemic will end, and when RDAP will reconvene. As such, Greenhow's drug rehabilitation is in jeopardy.  Accordingly, early release, with a supervised release condition of entry into a drug rehabilitation program, is a viable alternative that meets the goals of sentencing without a substantial decrease in the term of incarceration.

For the reasons set forth above, the Court grants Defendant's motion for compassionate release.

<u>**ORDER**</u>

**THIS MATTER** having come before the Court on Defendant Kenneth Greenhow's Motion for Compassionate Release, (ECF Nos. 249, 251); and the Court having carefully reviewed and taken into consideration the submissions of the parties, as well as the arguments and exhibits therein presented; and for good cause shown; and for all of the foregoing reasons;

**IT IS** on this 16 day of December, 2020,

**ORDERED** that Defendant's motion for compassionate release (ECF Nos. 249, 251) is granted to modify the terms of imprisonment to time served, and it is further

**ORDERED** that the terms of supervised release are amended to include (1) a period of home detention for one year; and (2) entry into and successful completion of a drug rehabilitation program as selected by the probation department.

_____
PETER G. SHERIDAN, U.S.D.J.